IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>                Defendant. | Civil Action No.: 03-195 (SBC)<br><br>Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, People for the Ethical Treatment of Animals ("PETA") requested documents from the United States Department of Agriculture ("USDA") relating to USDA's decision to guarantee a loan for Hunte Corporation. In response, USDA released the majority of the requested documents and withheld the remainder based on FOIA exemptions. PETA filed this case to obtain the withheld documents. The parties cross-moved for summary judgment. The cross-motions were granted in part and denied in part. PETA moves for an award of reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). For the reasons set forth below, the motion is denied.

## BACKGROUND

PETA made the FOIA requests to examine USDA's dual roles as an enforcer of the Animal Welfare Act ("the AWA") and a guarantor of loans for Hunte. USDA was charged with enforcing the AWA. 7 U.S.C. §§ 2132(b), 2133, 2146. The AWA requires pet dealers to provide "humane care and treatment" to pets; Hunte was a dealer regulated by the AWA. 7 U.S.C. §§ 2131(1), 2132(f). According to PETA, USDA's enforcement of the AWA was ineffective; Hunte was tied

to several alleged violators of the AWA. PETA Mem. at 3-4. Through its rural development program, USDA approved a loan guarantee for Hunte in September 2001. *Id.* at 7. This was the third in a series of USDA's loan guarantees for Hunte. *Id.* USDA was aware that Congressional representatives from Missouri, where Hunte is located, received some e-mails from the public voicing opposition to the loan guarantees. *Id.* at 8.

On December 12, 2001, PETA submitted its first FOIA request to USDA's rural development office in Missouri. *Id.* PETA requested "all agency records related to USDA guaranteed rural development loan to the McDonald County based Hunte Corporation, approved in September of 2001[,] including but not limited to the loan application and loan approval." *Id.* at 8-9. PETA's request was denied on the basis that PETA sent the request to the wrong USDA branch. *Id.* at 9. PETA resubmitted the request to the same office, contesting the denial. *Id.* The second request was denied on January 17, 2002. *Id.*

PETA appealed both denials to USDA's administrator in Washington D.C. *Id.* On November 27, 2002, USDA granted PETA's appeal in part, releasing 206 full and redacted pages of documents and withholding 17 full pages. PETA Mot. Ex. 5 at ¶ 15. USDA claimed exemptions under 5 U.S.C. §§ 552(b)(4)-(6) for withholding information. *Id.*

On February 6, 2003, PETA filed this case to compel disclosure of the withheld information. In an effort to settle, USDA conducted another search for responsive documents and released 24 additional pages. *Id.* at ¶ 17. Settlement negotiations fell apart when PETA failed to obtain certain documents concerning USDA's approval of the loan guarantee. *Id.* at ¶ 18. The parties then cross-moved for summary judgment.

2

To justify its withholding of documents, USDA submitted a *Vaughn* index. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The index described each withheld document, listed the claimed exemptions, and stated a justification. The index contained 83 documents totaling approximately 132 pages. USDA Mem. at 3. USDA asserted exemptions under 5 U.S.C. §§ 552(b)(4)-(6). *Id.* at 2. Because the index insufficiently described 24 documents, USDA produced these documents to the court for *in camera* inspection. *PETA v. U.S. Dep't of Agric.*, No. 03 C 195, 2005 WL 1241141, at *3 (D.D.C. May 24, 2005).

In response to USDA's cross-motion, PETA waived its interest in documents withheld under 5 U.S.C. § 552(b)(6) and documents relating to loan transfer and assignment. *Id.* at *1. But PETA sought the release of over 70 documents. *Id.*

Ruling on the cross-motions, the court upheld all of USDA's § 552(b)(5) claims. *Id.* at *12. The court granted partial summary judgment to PETA, holding that for 13 documents, USDA failed to establish its § 552(b)(4) claims. *Id.* As a result, USDA released portions of 19 pages. USDA Mem. at 3. The information released in these documents concerned three topics: (1) the percentage of the loan amount guaranteed by USDA and the guarantee fee paid by Hunte; (2) duplicate information disclosed in other documents; and (3) boilerplate loan terms and conditions. *PETA*, 2005 WL 1241141, at **9-10.

Pursuant to 5 U.S.C. § 552(a)(4)(E), PETA moves for an award of attorneys' fees and costs for the entire litigation in the amount of $51,604.26.

3

## DISCUSSION

### I. Standard

Section 552(a)(4)(E) allows the court to "assess against the United States reasonable attorney fees and other litigation costs" in any FOIA case in which plaintiff has substantially prevailed. 5 U.S.C. § 552(a)(4)(E). A motion under this provision requires the court to decide two questions: (1) whether plaintiff is eligible for an award; and if so, (2) whether plaintiff is entitled to an award. *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992). Both questions are left to the court's discretion. *Id.* at 1094.

### II. Eligibility

USDA does not dispute PETA's eligibility under § 552(a)(4)(E). PETA establishes that litigation was necessary and that this case substantially caused the release of the requested information. *Chesapeake Bay Found., Inc. v. U.S. Dep't. of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993). PETA brought this case after USDA denied part of its appeal. PETA obtained withheld information, as a result of its summary judgment motion. In other words, PETA obtained the information pursuant to a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *see also Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 456-57 (D.C. Cir. 2002) (applying the *Buckhannon Board* test to FOIA cases). PETA has substantially prevailed and is therefore eligible for an award of attorneys' fees under § 552(a)(4)(E). *Id.*

4

### III. Entitlement

In determining whether an eligible plaintiff is entitled to attorneys' fees under § 552(a)(4)(E), the court must consider at least four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Tax Analysts*, 965 F.2d at 1093. When weighing these factors, the court must keep in mind FOIA's basic policy to encourage public access to government information and to facilitate citizens' access to the courts. *Church of Scientology v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981).

#### A. Public Benefit

The public benefit factor is satisfied if the court ordered disclosure is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). Analysis of this factor requires an evaluation of (1) the specific information released under court order; and (2) the extent to which that information is already in the public domain. *Id.*; *see also Tax Analysts*, 965 F.2d at 1094.

PETA submits five documents, including an affidavit, e-mails, and news articles, to establish USDA's loan guarantee program was a topic "of significant public debate." PETA Mot. Exs. 3, 5, 17, 18, 20. These documents demonstrate some public interest in the program. *Id.* But the "public outcry" over the program might not have been as loud as it sounds in PETA's brief. *See* PETA Mot. Ex. 18 at 2 (stating that Hunte's competitors authored at least some of the e-mails to Congressional representative); *see also* USDA Mem. at 10 (claiming PETA members generated the e-mails). Nonetheless, the existence of the public's interest is beyond question.

5

PETA argues "[i]nformation released as a result of this case" satisfies the public benefit factor. PETA Reply at 7. PETA relies on three items of information: (1) USDA's failure to require Hunte to submit a business plan; (2) Hunte's involvement with Doug Hughes; and (3) Hunte's loan guarantee percentage. PETA's argument is too broad because only the third item was released under court order. *See Cotton*, 63 F.3d at 1120 (the court must evaluate "the specific documents at issue"). Accordingly, only the third item is relevant to the public benefit analysis.

PETA correctly argues the information concerning Hunte's loan guarantee percentage benefits the public by "add[ing] to the fund of information that citizens may use in making vital political choices." *Id.* As USDA admits, Hunte's loan guarantee percentage is governed by regulations. USDA Mem. at 9. Disclosure of this information helps the public assess whether USDA complied with regulations in approving Hunte's loan guarantee. Public benefit is therefore derived from the disclosure. *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 22 (D.D.C. 2004) (finding public benefit where the disclosure "will assist the citizenry in making informed judgments" about the agency).

To satisfy the public benefit factor, PETA need not quantify the impact on the public resulting from court ordered disclosure. *Id.* In fact, disclosure of Hunte's loan guarantee percentage has only limited impact on the public because USDA had released the bulk of the requested information — over 200 pages — before the commencement of this case. The settlement negotiations and litigation resulted in the release of less than 50 pages; the court ordered disclosure revealed only generic terms of the loan guarantee and some previously disclosed information. Even if the court takes into account all information released as a result of the entire case, the aggregate impact remains insignificant. Nonetheless, PETA satisfies the public interest factor.

USDA argues this case resulted in no public benefit at all, relying on *Cotton* and *Texas v. Interstate Commerce Commission*, 935 F.2d 728 (5th Cir. 1991). *Cotton* and *Texas* are distinguishable. In *Cotton*, plaintiff filed a FOIA suit against her former employer, a government agency. *Cotton*, 63 F.3d at 1116. She sought certain documents that would help her prepare an employment discrimination suit. *Id.* The district court found public benefit based on the precedential value of plaintiff's FOIA victory. *Id.* at 1120. But the Court of Appeals reversed, citing the absence of evidence showing that the disclosure would contribute to the public's ability to make vital political choices. *Id.* *Cotton* is inapplicable here because PETA has established a nexus between the court ordered disclosure and public benefit. In *Texas*, plaintiff suspected the Interstate Commerce Commission of wrongdoing and sought disclosure of documents to substantiate its suspicion. *Texas*, 935 F.2d at 734. Plaintiff moved for attorneys' fees after disclosure revealed no wrongdoing. *Id.* at 733. The Court of Appeals found no public benefit on the basis that no one from the public shared plaintiff's suspicion. *Id.* at 733-34. Here, however, PETA is not alone in having an interest in USDA's loan guarantee program. *See, e.g.*, PETA Mot. Ex. 18 at 1-2 (e-mails from the public to Congressional representatives). Thus, USDA's reliance on *Texas* is misplaced.

B.   **Commercial Benefit and Nature of PETA's Interest**

The second and third factors – commercial benefit and nature of plaintiff's interest – are often considered together. *Tax Analysts*, 965 F.2d at 1095. The parties agree that PETA is a nonprofit organization dedicated to the protection of animals. PETA Mem. at 19; USDA Mem. at 2. PETA disclaims any commercial benefit from this case. PETA Mem. at 9. No evidence suggests PETA can profit from USDA's information; it is undisputed that PETA intends to disseminate USDA's information to the public. Analyses of these two factors favor an award of attorneys' fees.

7

USDA asserts, without offering any evidence, that PETA brought this case to attract supporters. This assertion is speculative. As a result, the two cases cited by USDA are inapplicable as they both are predicated on findings of private, commercial interests in the FOIA suit. *See Church of Scientology v. USPS*, 700 F.2d 486, 494 (9th Cir. 1983); *see also Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984). Moreover, to be entitled to a fee award, PETA need not be completely free of self-interest. *See Piper*, 339 F. Supp. 2d at 22. Accordingly, USDA's arguments on the second and third factors are without merit.

### C.  Reasonableness of USDA's Legal Position

To satisfy this factor, USDA need only have "a colorable basis in law" for withholding information. *Chesapeake Bay Found.*, 11 F.3d at 216. USDA need not show the withheld information was in fact exempt. *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979). USDA need only demonstrate that it had a reasonable legal basis for claiming exemption and that its conduct was neither recalcitrant nor obdurate. *Id.*

On the parties' cross-motions for summary judgment, the court upheld all of USDA's § 552(b)(5) claims and the majority of its § 552(b)(4) claims. *PETA*, 2005 WL 1241141, at **11-12. Although USDA failed to establish its § 552(b)(4) claims for some documents, the failure was attributed to insufficiency of the evidence. *Id.* at *9. USDA's position in withholding these documents was weak, but not baseless. *Tax Analysts*, 965 F.2d at 1097 (weakness in legal position does not compel the conclusion of baselessness). Because USDA prevailed on the majority of its claims, its overall position was reasonable. *Id.* (affirming denial of fee award notwithstanding the government lost two appeals).

PETA argues USDA unreasonably withheld information concerning the approval of Hunte's loan guarantee, relying on *Martin Marietta Corp. v. Dalton*, 974 F. Supp. 37 (D.C.C. 1997), and *Niagara Mohawk Power Corp. v. United States Department of Energy*, 169 F.3d 16 (D.C. Cir. 1999). Both cases deal with the merits of FOIA exemptions; but neither sheds light on the reasonableness inquiry in the context of attorneys' fee awards.

PETA advances two arguments for finding USDA's conduct unreasonable. Neither has merit. PETA argues USDA denied the initial FOIA requests in bad faith. Even assuming USDA's pre-litigation conduct is relevant, USDA granted PETA's appeal in part and released the bulk of the requested information. PETA Mot. Ex. 5 at ¶ 15. No evidence suggests USDA acted in bad faith. PETA argues USDA was recalcitrant in refusing to release "the most basic information about the loan guarantee." PETA Mem. at 21. This argument misses the point: The inquiry here is whether USDA had a colorable basis in law to withhold information, not whether the withheld information was important to the FOIA requests.

This case is distinguishable from those cited by PETA, *Piper* and *Judicial Watch, Inc. v. Department of Commerce*, 384 F. Supp. 2d 163 (D.D.C. 2005). In *Piper*, defendant identified in its *Vaughn* index a document with unmistakable, detailed description. *Piper*, 339 F. Supp. 2d at 23. Plaintiff requested a document with a virtually identical description. *Id*. But defendant stated that no responsive documents could be found. *Id*. The court held defendant's statement amounted to recalcitrant conduct. *Id*. In *Judicial Watch*, the court found defendant "wrongfully withheld documents, destroyed documents, and removed . . . [documents] with the apparent intention of thwarting the FOIA." *Judicial Watch*, 384 F. Supp. 2d at 167. In both cases, evidence supported findings of recalcitrant and obdurate conduct.

9

USDA's conduct cannot be likened to the recalcitrant conduct in *Piper* and *Judicial Watch*. USDA failed to sufficiently describe 24 documents in the *Vaughn* index. *PETA*, 2005 WL 1241141, at *4. Yet the majority of USDA's claims of exemptions were ultimately sustained. *Id.* at *12. USDA redacted documents that duplicated previously disclosed information, *id.* at *9, but no evidence suggests USDA did so with the intent to frustrate PETA's efforts. In sum, USDA's partial loss on the cross-motions for summary judgment resulted from errors in legal judgment and perhaps blunder, but not from subterfuge. Accordingly, USDA did not engage in recalcitrant or obdurate conduct in this litigation; USDA had a colorable basis in law for its unsuccessful claimed exemptions.

### D.    Balancing the Factors

USDA's conduct in this litigation has been reasonable. This factor weighs heavily against an award of attorneys' fees. The public benefit resulting from this case is limited and therefore does not justify a fee award in light of USDA's reasonable conduct. While it is true that PETA brought this case to advance public interest and that PETA gained no commercial benefit, these factors do not carry the day. *See Cotton*, 63 F.3d at 1123 (reversing fee award based solely on the public benefit and reasonable basis factors). Consideration of these four factors counsels against a fee award. *Tax Analysts*, 965 F.2d at 1097 (affirming denial of attorneys' fees because the government was not recalcitrant).

## CONCLUSION

For the reasons set forth above, PETA's motion for an award of reasonable attorneys' fees and costs [49-1] is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge[1]

February 27, 2006

---

[1] On March 11, 2005, the Chief Justice of the United States reassigned this case to Judge Suzanne B. Conlon of the United States District Court for the Northern District of Illinois. *See PETA v. U.S. Dep't of Agric.*, No. 03 C 195, Dkt. No. 30 (D.D.C. Mar. 11, 2005).